JS 44 (Rev. 08/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1 U.S. Government Plaintiff
- ❏ 2 U.S. Government Defendant
- ❏ 3 Federal Question *(U.S. Government Not a Party)*
- ❏ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 340 Marine | ❏ 368 Asbestos Personal Injury Product Liability | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | | | ❏ 840 Trademark | ❏ 460 Deportation |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards Act | ❏ 861 HIA (1395ff) | ❏ 480 Consumer Credit |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 371 Truth in Lending | ❏ 720 Labor/Management Relations | ❏ 862 Black Lung (923) | ❏ 490 Cable/Sat TV |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Medical Malpractice | ❏ 380 Other Personal Property Damage | ❏ 740 Railway Labor Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 196 Franchise | | ❏ 385 Property Damage Product Liability | ❏ 751 Family and Medical Leave Act | ❏ 864 SSID Title XVI | ❏ 890 Other Statutory Actions |
| | | | ❏ 790 Other Labor Litigation | ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts |
| | | | ❏ 791 Employee Retirement Income Security Act | | ❏ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ❏ 895 Freedom of Information Act |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | | |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | ❏ 950 Constitutionality of State Statutes |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration Actions | | |
| | | ❏ 550 Civil Rights | | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ❏ 1 Original Proceeding
- ❏ 2 Removed from State Court
- ❏ 3 Remanded from Appellate Court
- ❏ 4 Reinstated or Reopened
- ❏ 5 Transferred from Another District *(specify)*
- ❏ 6 Multidistrict Litigation - Transfer
- ❏ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ❏ Yes ❏ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*

JUDGE _____ DOCKET NUMBER _____

DATE _____ SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.
 **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)
 **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** Nature of Suit. Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, | § § | |
| Plaintiff, | § § | |
| v. | § § § | Civil Action No. |
| UNITED STATES OF AMERICA; U.S. DEPARTMENT OF DEFENSE; ASHTON B. CARTER, Secretary of Defense, in his official capacity; U.S. DEPARTMENT OF THE AIR FORCE; and DEBORAH LEE JAMES, Secretary of the Air Force, in her official capacity, | § § § § § § § § § § | _____ |
| Defendants. | § | |

**COMPLAINT**

Plaintiff, the State of Texas ("State"), by and through its Attorney General, on behalf of the people of Texas and the Texas Commission on Environmental Quality ("TCEQ"), an agency of the State, files this Complaint and alleges as follows:

**I. NATURE OF THE ACTIONS**

1. This is a civil action brought by the State pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act, as amended ("CERCLA" or "Superfund"), 42 U.S.C. § 9607; regarding the ArChem/Thames Chelsea State Superfund Site, located at 13103 Conklin Lane, Houston, Harris County,

Texas (the "Site" or the "facility").

2. Pursuant to CERCLA Section 107, 42 U.S.C. § 9607, the State seeks to recover unreimbursed costs incurred by the TCEQ for Superfund response actions taken at or in connection with the Site, plus interest.

## II.  JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C. § 9613(b) and 28 U.S.C. § 1331.

4. Venue is proper in this District pursuant to 42 U.S.C. § 9613(b) and 28 U.S.C. §§ 1391(b) & (e) and 1367, because the release or threatened release of hazardous substances that gave rise to this action occurred in this District.

## III.  DEFENDANTS

5. Defendant, the United States of America, on behalf of the United States Department of Defense (including, but not limited to, the United States Air Force), may be served by sending a certified copy of the summons and of the complaint by certified mail to the Attorney General of the United States, to the civil process clerk at the office of the United States Attorney for the Southern District of Texas, to the Secretary of Defense, and to the Secretary of the Air Force.

6. Defendant, the United States Department of Defense, an agency of the United States of America, may be served by serving the United States by sending a certified

copy of the summons and of the complaint by certified mail to the United States Attorney for the Southern District of Texas and by sending a copy of the summons and of the complaint by certified mail to the Attorney General of the United States and to the defendant.

7. Defendant Ashton B. Carter, Secretary of Defense, sued in his official capacity, may be served by serving the United States by sending a certified copy of the summons and of the complaint by certified mail to the United States Attorney for the Southern District of Texas and by sending a copy of the summons and of the complaint by certified mail to the Attorney General of the United States and to the defendant.

8. Defendant, the United States Department of the Air Force ("U.S. Air Force"), an agency of the United States of America, may be served by serving the United States by sending a certified copy of the summons and of the complaint by certified mail to the United States Attorney for the Southern District of Texas and by sending a copy of the summons and of the complaint by certified mail to the Attorney General of the United States and to the defendant.

9. Defendant Deborah Lee James, Secretary of the Air Force, sued in her official capacity, may be served by serving the United States by sending a certified copy of the summons and of the complaint by certified mail to the United States Attorney for the Southern District of Texas and by sending a copy of the summons and of the complaint

by certified mail to the Attorney General of the United States and to the defendant.

10.  Each Defendant is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

## IV.  CONDITIONS PRECEDENT

11.  All conditions precedent have been performed or have occurred.

12.  The State has given the United States notice of this claim through correspondence, PowerPoint presentations and emails in 2009-2010, culminating in an email exchange with the U.S. Department of Justice on December 17, 2010, in which the United States denied the claim.

## V.  GENERAL ALLEGATIONS

**A.   The Site**

13.  The Site consists of approximately 10.14 acres and is located at 13103 Conklin Lane, Houston, Harris County, Texas.

14.  Archem Co. (Archem) owned all or portions of the Site between 1961 and 2003. The Site consisted of four separately deeded adjacent tracts, identified in the deeds as Tracts 2, 4, 7 and 8. Archem acquired Tract 4 in 1961 and Tract 8 in 1962. Archem sold both tracts in 1976 to the H.B. Fuller Company, which operated a facility manufacturing latex, adhesives, and asphalt emulsions on the property for a year until a fire destroyed the facility. H.B. Fuller sold Tracts 4 and 8 back to Archem in 1978. Meanwhile, Archem

purchased Tract 7 in 1970 and Tract 2 in 1974.

15.     Archem operated the Site from 1961 through 1990. Between 1961 and 1991, the Site operated as a specialty chemical and toll manufacturing facility. A wide range of organic chemicals and catalysts was manufactured at the facility. Processing equipment included boilers, reactors and above-ground storage tanks. Waste-handling equipment included an API separator and two evaporation ponds.

16.     The facility had substandard industrial hygiene and waste disposal practices. Spills, leaks, mechanical failures and poor housekeeping practices resulted in releases, discharges, or disposal of hazardous substances to and from the Site. Hazardous substances, including but not necessarily limited to benzene, toluene, chlorobenzene, dichlorobenzene, methylene chloride, tetrachloroethylene, ethylbenzene and xylene, were disposed of at the Site and were released or threatened to be released into the environment.

**B.     Response Actions in Connection with the Site**

17.     From 2002 through 2005, TCEQ conducted a remedial investigation at the Site. Based upon Site conditions, assessments, sampling and analytical results, TCEQ determined that response activities were required to address the release and threatened releases of hazardous substances and/or the disposal of such substances at the Site.

18.     On July 15, 2009, TCEQ issued an Administrative Order for the Site which

selected a remedial action to address hazardous substances released to the soils and pond sediment by removal and off-site disposal of the contaminated materials.

19.   TCEQ conducted a remedial action at the Site from December 2010 through March 2011.

20.   TCEQ expended $3,897,830.09 in performing the removal, remedial investigation, and remedial action at the Site. The TCEQ has recovered $3,070,817.00 in cost recovery actions with other parties. A sum of $827,013.09 in remediation costs, plus interest, remains outstanding.

21.   The TCEQ's remedial costs were incurred in a manner not inconsistent with the National Contingency Plan ("NCP"), *see* 40 C.F.R. Part 300. Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607, the TCEQ is entitled to recover these response costs from any person who by contract, agreement, or otherwise, arranged for disposal or treatment of hazardous substances owned or possessed by such person at a facility owned or operated by another party and containing such hazardous substances, from which there was a release or threatened release.

**C.   U.S. Air Force's Relation to the Site**

22.   In December 1985, the U.S. Air Force entered into contract F41608-85-M-7241 with Archem for reprocessing out-of-specification cruise missile fuels. A second contract, F41608-87-D-0403 was awarded in July 1987 to Archem to continue the

reprocessing of out-of-specification cruise missile fuels. The second contract was effective through 1990.

23. Under these two contracts, Archem received shipments of off-specification missile fuel at the Site up to June 6, 1990. At least 85,844 gallons of out-of-specification cruise missile fuel was sent to the Site under these contracts. This fuel was off-specification due to hazardous substances that had been added or had increased in concentration during storage or use.

24. As identified on the Government bills of lading, contractors for the Air Force sent the following types of missile fuel to Archem: RJ-4, JP-9 and JP-10. The fuel was sent in large tank trucks and 55-gallon drums. The U.S. Air Force abandoned the drums to Archem.

25. The U.S. Air Force also performed safety and inventory inspections at Archem. By conducting safety inspections and inventory inspections, and directing waste disposal at the Archem facility, the U.S. Air Force became a de facto operator of the Site.

26. For each delivery of missile fuel to the Site, the Air Force sent analytical results to Archem identifying the specification parameters that the fuel failed to meet. Some of the fuel delivered to the Site had levels of chlorinated compounds that exceeded the fuel's specifications.

7

27. Archem's processing of the fuel included distillation and clay filtering. Chlorine contamination was removed by distillation.

28. Approximately 22% of the missile fuel sent to the Site was lost during the reprocessing. The fuel lost during reprocessing included lights and bottoms of the distillation and other reprocess waste.

29. Process area wastes at the Site, including hose and reactor clean-outs, process spills, boiler and cooling tower blowdown and tank truck washings, were drained into an API Separator. The aqueous portion of the API Separator wastes were pumped into evaporation ponds.

30. Toluene, ethylbenzene and xylene are minor constituents of JP-9 and JP-10, but are substantially more water soluble than the major constituents of these fuels. These materials would have expected to, and did, wind up in the evaporation ponds. The residue—i.e., the toluene, ethylbenzene and xylene—which are all hazardous wastes and were created from Archem's reprocessing of the rocket fuel, had to be addressed during the TCEQ's remedial action.

31. Toluene, ethylbenzene and xylene, along with chlorobenzene, dichloro-benzene, methylene chloride, and tetrachloroethylene, were detected in the soils and pond sediments at the Site during TCEQ's investigation and remedial action.

32. The U.S. Air Force sent 14 drums of product to Archem for reprocessing; the

Air Force later identified the material as waste. The U.S. Air Force directed Archem to dispose of this waste on Site, specifying that Archem dispose of any aqueous portion of the waste in the API Separator.

### FIRST CLAIM FOR RELIEF — SUPERFUND COST RECOVERY

33. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—
> …
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, …
>
> shall be liable for—
>
> > (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
> > …
> > (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and
> >
> > (D) the costs of any health assessment or health effects study carried out under section 9604(I) of this title.

34. The State of Texas is a "State" and a "person" within the meaning of Section

101(21) of CERCLA, 42 U.S.C. § 9601(21).

35. The TCEQ is an agency of the State of Texas with jurisdiction to perform Superfund cleanups and seek cost recovery. *See* Tex. Health & Safety Code ch. 361, subch. F–L.

36. The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

37. The actions taken by the State in connection with the Site constitute "response" actions within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), in connection with which the State has incurred costs.

38. Chlorobenzene, dichlorobenzene, methylene chloride, tetrachloroethylene, toluene, ethylbenzene, xylene and other substances found at the Site are hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

39. The hazardous substances found in soil and sediment at the Site were released or threatened to be released into the environment, within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(29).

40. To protect the public health, welfare and the environment from the actual or threatened release of hazardous substances from the Site, the TCEQ undertook response activities with respect to the Site that were not inconsistent with the NCP, including but not limited to removal actions, remedial investigations, and remedial actions.

41. By the actions stated above, the Defendants, by contract, agreement, or otherwise, arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment at the Site, of hazardous substances owned or possessed by the U.S. Air Force, within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

42. By making decisions and giving directions concerning the disposal of waste owned or possessed by the U.S. Air Force at the Site, the Defendants became "operators" of the Site at the time of disposal of hazardous substances, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

43. Accordingly, the Defendants are liable to the State for all its unreimbursed costs of removal, remedial investigation, and remedial action at the Site, as required by Section 107(a)(4)(A) of CERCLA, 42 U.S.C. § 9607(a)(4)(A).

### SECOND CLAIM FOR RELIEF — INTEREST ON RESPONSE COSTS

44. Paragraphs 1–43 are re-alleged and incorporated herein by reference.

45. Section 107(a)(4)(D) of CERCLA, 42 U.S.C. § 9607(a)(4)(D), provides in pertinent part:

> The amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D). Such interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned. The rate of interest on the outstanding unpaid balance of the amounts recoverable under this section shall be the same rate as is

specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of Title 26. For purposes of applying such amendments to interest under this subsection, the term "comparable maturity" shall be determined with reference to the date on which interest accruing under this subsection commences.

46. Accordingly, the State is entitled to recover interest on its unpaid response costs from the later of December 17, 2010, or the date of expenditure, until paid.

## PRAYER

WHEREFORE, the State of Texas prays that this Court:

1. Enter judgment in favor of the State and against Defendants for all costs incurred by the TCEQ for response actions in connection with the Site and not otherwise reimbursed, plus prejudgment and post-judgment interest; and

2. Grant such other relief as the Court deems just and proper.

Respectfully submitted this 8th day of September 2016.

        KEN PAXTON
        Attorney General of Texas

        JEFFREY C. MATEER
        First Assistant Attorney General

        BRANTLEY STARR
        Deputy First Assistant Attorney General

        JAMES E. DAVIS
        Deputy Attorney General for Civil Litigation

PRISCILLA M. HUBENAK
Chief, Environmental Protection Division


  s/ *Thomas H. Edwards*
THOMAS H. EDWARDS
Assistant Attorney General
ATTORNEY IN CHARGE
Tex. Bar No. 06461800
S.D. Tex. No. 152099
Thomas.Edwards@TexasAttorneyGeneral.gov

CRAIG J. PRITZLAFF
Assistant Attorney General
Tex. Bar No. 24046658
S.D. Tex. No. 1140776
Craig.Pritzlaff@TexasAttorneyGeneral.gov

Office of the Attorney General
Environmental Protection Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2012
Fax: (512) 320-0911

ATTORNEYS FOR THE STATE OF TEXAS